Richard C. Gramlich, (SBN 014449)

**TB** **TIFFANY & BOSCO**
P.A.

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237
TELEPHONE: (602) 255-6000
FACSIMILE:  (602) 255-0103
E-Mail:  RCG@tblaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Todd Schwartz, a married man,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>4 Ever Life International Limited dba 4 Ever Life Insurance Company, an Illinois corporation; 4 Ever Life Insurance Company, an Illinois corporation; Blue Cross and Blue Shield Association, an Illinois corporation; BCS Financial Corporation, an Illinois corporation; BCS Financial Services Corporation, an Illinois corporation; Worldwide Insurance Services, LLC, a foreign registered limited liability company; and Black and White Corporations I-X,<br><br>                    Defendants. | Case No. 2:20-cv-02002-DJH<br><br>**Second Amended Complaint**<br>**(Breach of Contract and Bad Faith)**<br><br>**(Jury Trial Demanded)**<br><br><br>**(Assigned to the Honorable Diane J. Humetewa)** |

Plaintiff, Todd Schwartz ("Schwartz") by and through his attorneys, Tiffany & Bosco, P.A., for his Second Amended Complaint against 4 Ever Life International Limited dba 4 Ever Life Insurance Company and 4 Ever Life Insurance Company (collectively "4 Ever"), Blue Cross and Blue Shield Association, BCS Financial Corporation and BCS Financial Services Corporation (collectively "BCBS") and Worldwide Insurance Services, LLC ("Worldwide") alleges as follows:

-1-

**GENERAL ALLEGATIONS**

1.  Schwartz is a resident of Maricopa County, Arizona.

2.  4 Ever and BCBS conduct insurance business within the State of Arizona, and entered into, insured and/or licensed an insurance contract and caused acts to occur in Maricopa County, Arizona, such that they are subject to this Court's jurisdiction and venue.

3.  Worldwide is the administrator/adjuster for the GeoBlue policies, which conducts business in Maricopa County, Arizona, such that it is subject to this Court's jurisdiction and venue.

4.  At all times material thereto, Worldwide was acting as an independent contractor for 4 Ever and/or BCBS, which is liable for same.

5.  Upon information and belief, 4 Ever Life International Limited and 4 Ever Life Insurance Company are related entities, one or both of which is/are the insurer on the subject GeoBlue Trekker Choice Policy and are so closely related that they are the alter ego of each other and each liable for the liability of the other, under a piercing of the corporate veil theory.

6.  Upon information and belief, Blue Cross and Blue Shield Association, BCS Financial Corporation and BCS Financial Services Corporation are related entities, one or all of which is/are the insurer, additional insurer and/or guarantor of the subject GeoBlue Trekker Choice Policy and are so closely related that they are the alter ego of each other and each liable for the liability of the other, under a piercing of the corporate veil theory.

7.  Black and White Corporations I-X are fictitious entities which may be syndicated participants in the subject insurance policy.  Once their true identities are revealed, they will be amended herein.

8.  All acts complained of herein occurred within Maricopa County, Arizona.

9.  Pursuant to Rule 26.2, *Ariz.R.Civ.Pro.*, this matter qualifies for Tier 3, as it is medically and legally complex, with damages in excess of $300,000.

1    10.    On or about April 1, 2018, Schwartz purchased from the defendants a

2  "GeoBlue Trekker Choice" travel insurance policy, which provided coverage for

3  "Emergency Medical Transportation" up to $500,000 (the "Policy").

4    11.    On or about September 16, 2018, while going down some stairs in Florence,

5  Italy, Schwartz fell and broke his left leg in multiple places.

6    12.    Schwartz was transported to the Santa Maria Annunziata Hospital in Florence

7  for treatment, where he was seen by Dr. Mondaini.

8    13.    Both the hospital and treating physician, were ill-equipped and not specialized

9  enough to handle the severity of the fractures to Schwartz's left leg.

10    14.    Schwartz contacted 4 Ever/Worldwide on September 17, 2018, requesting

11  Emergency Medical Transportation to be returned to the United States for emergency

12  treatment with a specialized orthopedic surgeon, but a response was not forthcoming.

13    15.    It wasn't until September 19, 2018, three days after the fall and repeated calls

14  to 4 Ever/Worldwide for a response, that they denied coverage to return Schwartz to the

15  United States for treatment.

16    16.    In denying coverage under the Policy, Worldwide claimed that it had

17  Schwartz's medical condition reviewed by a qualified physician, who determined that

18  transportation to and surgery in the United States was not "medically necessary" or

19  "appropriate and necessary."

20    17.    Schwartz requested a copy of any physician review of the medical necessity of

21  his requested transportation but was never provided with same.

22    18.    Upon information and belief, Worldwide's representations about an

23  independent physician review were false and were made to aid and abet 4 Ever/BCBS' denial

24  of Schwartz' claim.

25    19.    As a result of 4 Ever/Worldwide's denial, Schwartz was forced to undergo

26  surgery on September 20, 2018, in the Italian hospital.

20.     Schwartz returned to the United States on September 29, 2018, at his own expense, and subsequently sought a medical evaluation from Gregory Evangelista, M.D., ("Dr. Evangelista") an orthopedic surgeon.

21.     Dr. Evangelista's review of Schwartz's x-rays and CT scan revealed gapping at the articular surface and apparent posterior subluxation of the ankle joint such that Dr. Evangelista was of the opinion that surgical reduction had not been properly performed.

22.     Unfortunately, Dr. Evangelista felt that the risk of corrective surgery was too high.

23.     Schwartz obtained a second opinion from Peter Mitchell, M.D. ("Dr. Mitchell") on October 23, 2018.

24.     After reviewing Schwartz's x-rays and CT Scan, Dr. Mitchell noted a type of step-off in the joint, significant comminution of the joint surface and a lateral central plafond portion that was pushed up with a posteriorly subluxed ankle.

25.     Dr. Mitchell diagnosed Schwartz with a six-week old complex tibia and fibula fracture.  He noted ongoing issues including:  (1) the talus was subluxed posteriorly and perched on the fractured edge of the tibia, (2) the long screw appeared to protrude against his peroneal tendons, and (3) the intra-articular reduction was not adequate.

26.     It was Dr. Mitchell's opinion that the type of fractures suffered by Schwartz should have been fixed by an orthopedic trauma specialist or an orthopedic foot and ankle specialist, and Dr. Mitchell could not deduce from the treatment whether Dr. Mondaini had that training.

27.     Dr. Mitchell was of the opinion that the current status of Schwartz's fractures would give him significant arthritis very rapidly and he would have difficulty walking.  Dr. Mitchell recommended a revision of Schwartz's left distal tibia.

28.     On October 26, 2018, Schwartz underwent revision surgery, which required removal of some of the screws from the distal tibia plate, the one screw in the fibula and the syndesmosis screw and re-setting the fractures.

29.     It was Dr. Mitchell's opinion that Schwartz would not reach a plateau of healing for six months to a year.  Dr. Mitchell also noted that Schwartz may need to remove the hardware after about a year post-op, due to the amount in his leg, but that same would be based on mechanical symptoms.

30.     Schwartz was casted up to six weeks and restricted to non-weightbearing for 10 to 12 weeks after surgery.  His overall recovery took over a year.

31.     Schwartz healed well post-surgery and underwent physical therapy from January 30, 2019, to April 25, 2019.

32.     It was Dr. Mitchell's opinion that Schwartz would still likely get arthritis in his left ankle along with possible need for a fusion or replacement sometime within the next two to ten years, at the estimated cost of $33,000.

33.     Schwartz incurred the following medical costs as a result of his injuries which were not properly resolved in Italy:

| | |
|---|---|
| Evangelista Orthopedics | $796.00 |
| Ortho Arizona – Arizona Sports Medicine Center | $12,269.75 |
| SSMC Shea Medical Center | $104,891.80 |
| Valley Anesthesiology Consultants, Inc. | $4,976.00 |
| Foothills Sports Medicine & Rehabilitation | $2,332.00 |
| **TOTAL MEDICAL SPECIALS:** | **$125,265.55** |

34.     Due to the injuries Schwartz sustained as a result of 4 Ever/Worldwide's refusal to fly Schwartz back to the United States for proper surgical treatment, he suffered significant wage losses from his injuries.

35.     As a self-employed Commercial Photographer, Schwartz was unable to work at his pre-injury status for about a year, resulting in $96,354 in lost income.

36.     As a result of 4 Ever/Worldwide's refusal to return him to the United States to undergo treatment with a qualified orthopedic trauma surgeon, Schwartz's injuries resulted in a 22 percent permanent lower extremity impairment, as a result of motion deficits and joint space narrowing, pursuant to the Sixth Edition of the AMA Guides to the Evaluation of Permanent Impairment.

37.     As Dr. Mitchell indicated, Schwartz has a good chance of undergoing additional surgery for hardware removal and an ankle arthroscopy in the next year or so.  The current fee for this type of surgery is approximately $8,000, which includes the facility, surgeon and anesthesia fee along with physical therapy.

38.     There is a greater than 50% chance Schwartz will have to undergo either ankle fusion or replacement within the next two to ten years.  The current fee for those types of procedures is approximately $25,000, which includes the facility, surgeon and anesthesia fee along with physical therapy.

## 4 EVER/BCBS' BAD FAITH

39.     Schwartz purchased a "GeoBlue Trekker Choice" travel insurance policy from 4 Ever, which provided him coverage for "Emergency Medical Transportation/evacuations" up to $500,000, with no deductible, and purported to be backed by BCBS.

40.     4 Ever/BCBS' duty to act in good faith with respect to its policies is a non-delegable duty, rendering 4 Ever/BCBS liable for the acts of its agents/independent contractors, including Worldwide.

41.     The "covered services" are "medically necessary services," which are defined as being "appropriate and necessary," "direct care," "within standards of good medical practice and not primarily for the patient's convenience," and for "the most appropriate supply or level of service that can be safely provided."

42.     Schwartz was entitled to the following coverage under the policy:

**Emergency Medical Evacuation Benefit**

<u>If a covered person suffers a sudden accident</u> or unforeseen illness <u>resulting in a life-threatening/limb-threatening medical condition</u>, and we or our designee's medical provider determines that <u>adequate medical facilities are not available locally, we or our designee will arrange for emergency evacuation to the nearest or most appropriate provider capable of providing adequate care</u>, without which there would be a significant risk of death or serious impairment.  (Emphasis added.)

43.     4 Ever/BCBS, in bad faith, failed to timely and adequately investigate his claim and failed to afford Schwartz the protection and coverage he specifically paid for, by failing to provide him "medically necessary" transport to a qualified American hospital and orthopedic surgeon, following his "sudden accident" resulting in "limb-threatening medical condition," i.e., complex fractures of his tibia and fibula, when there was not "adequate medical facilities" available locally in Italy, without which Schwartz faced a "significant risk" of a "serious impairment" to his left leg, without a good faith basis to do so.

44.     Instead, 4 Ever/BCBS left Schwartz to have complicated orthopedic surgery, in an Italian hospital, and by an Italian physician who was not qualified to perform same.

45.     As a result, Mr. Schwartz was left in Italy with a "limb-threatening medical condition" at a facility which did not have a doctor qualified to perform the surgery, thereby exposing him to a "significant risk of serious impairment," which he now in fact has sustained, as a result of GeoBlue's bad faith denial of the very coverage Mr. Schwartz purchased.

///

///

### FIRST CLAIM FOR RELIEF

### (Breach of Contract-4 Ever)

46.     Schwartz incorporates herein all averments set forth in the paragraphs above.

47.     Schwartz is an insured under the Policy.

48.     Under the Policy, 4 Ever had the obligation to arrange for emergency medical evacuation of Schwartz, from an unqualified Italian hospital and physician, to a qualified care provider to avoid the risk of serious impairment to life or limb.

49.     Despite Schwartz's demands, 4 Ever breached its Policy by failing and refusing to pay to have Schwartz transported from the Italian hospital to an American hospital where he could obtain qualified and appropriate medical care and treatment.

50.     As a result of 4 Ever's failure to honor its obligations under the Policy, Schwartz has suffered current and future damages in an amount to be determined at trial.

51.     This matter arises out of contract such that Schwartz is entitled to recover his reasonable attorneys' fees and costs incurred, pursuant to the terms of the Policy and/or A.R.S. § 12-341.01.

### SECOND CLAIM FOR RELIEF

### (Bad Faith-4 Ever and BCBS)

52.     Schwartz incorporates herein all averments set forth in the paragraphs above.

53.     4 Ever/BCBS knowingly or recklessly denied Schwartz the coverage he was entitled to under the Policy.

54.     4 Ever/BCBS' knowing denial of coverage was unreasonable.

55.     4 Ever/BCBS' failure to pay for Schwartz's covered emergency transportation to a qualified medical facility was unreasonable and in bad faith for the reasons outlined herein, including, without limitation:

      A.     Schwartz's entitlement to coverage under the Policy was not "fairly debatable;"

B.     4 Ever/BCBS failed to promptly investigate, make a proper determination, adjust and extend the Emergency Travel Coverage due under its Policy with Schwartz;

C.     4 Ever/BCBS placed its interests before those of its insured, by seeking to reduce its own exposure and not provide the very coverage 4 Ever/BCBS had agreed to, and had a contractual duty to, provide;

D.     4 Ever/BCBS deprived Schwartz of the benefits and security he was entitled to under the Policy;

E.     4 Ever/BCBS have forced Schwartz to file suit to recover the benefits he was owed under the Policy; and

F.     4 Ever/BCBS' refusal to pay Schwartz' covered damages is otherwise a knowing and/or reckless violation of controlling law and industry standards.

56.     As a result of 4 Ever/BCBS' unreasonable failure to honor its coverage obligations, Schwartz has been damaged in an amount to be determined at trial.

57.     4 Ever/BCBS' denial of the very coverage which Schwartz purchased was done in bad faith and with knowledge that it would pose "a significant risk of substantial harm" to Schwartz, such that he will be entitled to seek exemplary and/or punitive damages against 4 Ever/BCBS.

## THIRD CLAIM FOR RELIEF

### (Aiding and Abetting a Breach of Contract/Bad Faith – Worldwide)

58.     Schwartz incorporates herein all averments set forth in the paragraphs above.

59.     Worldwide was acting as an independent contractor and was the adjuster for 4 Ever/BCBS on the Policy.

60.     4 Ever/BCBS breached their insurance policy with Schwartz and acted in bad faith in denying his coverage.

1    61.    Worldwide was aware that 4 Ever/BCBS' denial of coverage for emergency

2  transportation for Schwartz constituted a breach of its policy and bad faith.

3    62.    Worldwide substantially assisted 4 Ever/BCBS in breaching their insurance

4  policy and committing bad faith by falsely claiming to Schwartz that it had an independent

5  qualified physician review his claim and determine that his request was not "medically

6  necessary" and/or "appropriate and necessary".

7    63.    Worldwide has failed to produce any review despite Schwartz' request for

8  same.

9    64.    Upon information and belief, Worldwide never had an independent qualified

10  physician review Schwartz' claim to support its denial of benefits.

11    65.    As a direct and proximate result of Worldwide's aiding and abetting 4

12  Ever/BCBS' breach of its policy and bad faith, Schwartz suffered damages in an amount to

13  be proven at trial.

14    66.    Worldwide's aiding and abetting was done in bad faith and with the knowledge

15  that it would pose a "significant risk of substantial harm" to Schwartz, such that he will be

16  entitled to seek exemplary and/or punitive damages against Worldwide.

17    **WHEREFORE**, Schwartz prays for judgment against 4 Ever on Count One of the

18  Second Amended Complaint; 4 Ever and BCBS, jointly and severally, on Count Two of the

19  Second Amended Complaint; and against Worldwide on Count Three of the Second

20  Amended Complaint as follows:

21    1.    Awarding judgment in Schwartz's favor and against Defendants, in the amount

22        of the direct, consequential and general damages incurred by Schwartz, now

23        and in the future, as the result of the unlawful acts pled above, plus

24        prejudgment interest and attorney's fees and costs as permitted by law;

25    2.    For an award of punitive damages; and

26    3.    For such further and additional relief as the Court deems necessary and/or

1    proper under the circumstances.

2    DATED this 13th day of November, 2020.

3                                      **TIFFANY & BOSCO, P.A.**

4

5                                      By:   */s/ Richard C. Gramlich*
                                             Richard C. Gramlich
                                             Seventh Floor Camelback Esplanade II
6                                            2525 East Camelback Road
                                             Phoenix, Arizona 85016
7                                            ***Attorneys for Plaintiff***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2020, I electronically filed the foregoing document and any attachments using the CM/ECF system which will send a notice of electronic filing to all parties as listed on the Notice of Electronic Filing:

Sean P. Healy
Robert C. Ashley
Lewis Brisbois Bisgaard & Smith llp
2929 N. Central Avenue, Suite 1700
Phoenix, AZ 85012-2761
*Attorneys for Defendant 4 Ever Life International Limited*

By: */s/ Lisa Mocek*