**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Todd Schwartz, | No. CV-20-02002-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| 4 Ever Life International Limited, et al., | |
| Defendants. | |

Pending before the Court is Defendants 4 Ever Life International Limited, Blue Cross and Blue Shield Association, and Worldwide Insurance Services, LLC's (collectively "Defendants") Motion to Compel Arbitration. (Doc. 21). Plaintiff filed a Response (Doc. 24), and Defendants filed a Reply. (Doc. 25). The matter is fully briefed. The Court now issues its ruling.

**I.     Background**

Plaintiff Todd Schwartz's claims originate from a travel insurance policy his wife, Yoko Nishiguchi, applied for on June 26, 2018. (Doc. 24 at 2). After purchasing a policy online (the "Policy"), Mr. Schwartz suffered an injury overseas. (Doc. 11 at ¶ 11). He filed a claim and later appealed the denial of his claim. (Docs. 24 at 3; 25 at 3). Ultimately, he was denied coverage. He brings three claims against Defendants for breach of contract, bad faith, and aiding and abetting. (Doc. 11). On December 28, 2020, Defendants 4 Ever Life International Limited ("4 Ever Life"), Blue Cross and Blue Shield Association ("BCBS"), and Worldwide Insurance Services, LLC ("Worldwide"), sought to enforce the

arbitration clause in the Policy by filing a Motion to Compel Arbitration. (Doc. 21). The parties now dispute whether the Policy's arbitration clause is enforceable. (Docs. 21; 24; 25).

When applying for the Policy online, Mrs. Nishiguchi began by reviewing the benefits and entering the required background and contact information. (Doc. 24 at 2). The website then navigated her to a section titled "Terms of Policy Issuance/Access Agreement." (Doc. 24-2 at 6). In this section, applicants are required to acknowledge and consent to three agreements: Key Plan Provisions, Access Agreement, and Terms of Policy Issuance. (*Id.*) The Key Plan Provisions require the applicant to certify that the applicant has primary health insurance. (*Id.*) The Access Agreement sets out terms for use of the website. (*Id.* at 8). The Terms of Policy Issuance informs the participant who the policy is issued by and states that the quoted price includes a membership fee. (*Id.* at 6). The website required Nishiguchi to acknowledge and consent to the three agreements before she could "continue to payment." (*Id.* at 7). None of the agreements contained an arbitration clause. (Doc. 24 at 2). Thus, Mrs. Nishiguchi was not required to read, acknowledge, or agree to an arbitration clause before proceeding to payment. (*Id.*)

Elsewhere on the site, however, and accessible to Mr. Schwartz and Mrs. Nishiguchi, was a link: "Plan Description download.pdf." (Doc. 24-3 at 2). The link leads to an "Individual Certificate of Coverage [that] describes the main features" of the Policy. (*Id.* at 4). The Policy names 4 Ever Life as the insurer. (*Id.* at 5). It names Worldwide as the administrator. (*Id.*) It also states that 4 Ever and Worldwide are independent licensees of BCBS. (*Id.*)

The Policy's description entails who is eligible for coverage, how the plan works, what the plan pays, and what the plan does not pay for. (*Id.* at 4). The last section, "General Provisions," contains instructions on filing claims and appealing coverage decisions. (*Id.* at 23–24). Under "General Provisions" is a subsection titled "Grievances." (*Id.* at 23). Under "Grievances" is a subsection titled "Dispute Resolution." (*Id.* at 25). The third paragraph under this subsection has an arbitration clause. (*Id.*) It reads as follows:

> All grievances not resolved by the Insurer's grievance procedures, and all other controversies and claims arising out of or relating to the Policy, or any coverage provided thereunder, shall be determined by final and binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules") . . . The award rendered by the arbitrator shall be final, non-reviewable and non-appealable and binding on the parties and may be entered and enforced in any court having jurisdiction. There shall be one arbitrator agreed to by the parties within twenty (20) days of receipt by respondent of the request for arbitration or in default thereof appointed by the AAA in accordance with its Commercial Rules. The seat or place of arbitration shall be Philadelphia, Pennsylvania.

(*Id.*)

## II. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The savings clause of § 2 "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) (internal quotation marks omitted).

The Supreme Court interprets § 2 as a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2)

whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. If both questions yield positive answers, then the FAA "requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* Accordingly, the Court will begin by evaluating whether the Policy contained a valid arbitration clause.

### III. Validity of Arbitration Clause

Mr. Schwartz brings three arguments challenging the validity of the arbitration clause. (Doc. 24). First, he argues he did not agree to arbitration. (Doc. 24 at 9). Second, he claims that the arbitration clause is both procedurally and substantively unconscionable. (Doc. 24 at 12). Third, Mr. Schwartz claims the reasonable expectations doctrine voids the Policy's arbitration clause. (*Id.*)

#### a. Mutual Assent

"Arizona law applies to whether a valid arbitration agreement exists." *Shelby v. Brookdale Senior Living Inc.*, 2021 WL 718183, at *1 (D. Ariz. Feb. 24, 2021) (citing *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058–59 (9th Cir. 2020)). A contract must "manifest mutual assent, i.e., the parties' intent to be bound." *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1064 (D. Ariz. 1997) (citing *Keith Equip. Co. v. Casa Grande Cotton Fin., Co.*, 928 P.2d 683, 685 (Ariz. Ct. App. 1996)). This analysis focuses on objective evidence, not the parties' hidden intent. *Silva v. Butori Corp.*, 2020 WL 2308528, at *4 (D. Ariz. May 8, 2020). "Objective evidence includes written and spoken words as well as acts." *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 132 P.3d 825, 828 (Ariz. 2006) (citing *Corbin–Dykes Elec. Co. v. Burr*, 500 P.2d 632, 634 (Ariz. Ct. App. 1972)) (holding that the manifestation of mutual assent "is determined by the words used and the other manifestations of intent having reference to the contract"); *see also* Restatement (Second) of Contracts § 19(1) ("The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act."). The requirement of mutual assent applies "with no less vigor to formation of arbitration contracts." *Silva*, 2020 WL 2308528, at *4.

Under the doctrine of separability, "an arbitration provision is considered to be an

independent and separate agreement between the parties to the underlying contract." *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.*, 795 P.2d 1308, 1312 (Ariz. Ct. App. 1990); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967) ("[E]xcept where the parties otherwise intend—arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are imbedded . . . ."). Therefore, "only when the arbitration provision is enforceable will the court compel arbitration." *Stevens/Leinweber/Sullens, Inc.*, 795 P.2d at 1313.

Mr. Schwartz asserts there was no mutual assent to the arbitration clause because neither he nor his wife were required to review and consent to the terms of the Policy *before* completing the insurance transaction. (Doc. 24 at 8–9). Mr. Schwartz stresses that he received a mailed copy of the Policy *after* he was injured and filed his insurance claim. (*Id.* at 9). He does, however, acknowledge that the Policy was available to him to review on the website by selecting the "Plan Description download.pdf" link. (*Id.* at 2). Mr. Schwartz also argues that, though the Policy describes the coverage, it has no binding language and no signatures to indicate it is a contract. (*Id.* at 9).

Defendants contend that Mr. Schwartz assented to the Policy's terms by filing an insurance claim. (Doc. 25 at 3). They also contend that Mr. Schwartz assented to the Policy's terms by appealing the denial of his claim using the instructions in the Policy. (*Id.*) Defendants also note that, in a letter sent by Mr. Schwartz's counsel, he asserted that if the parties could not reach a resolution, "[they] would have no alternative but to pursue arbitration through the AAA." (*Id.*) This course of action, they argue, shows Mr. Schwartz had agreed to the Plan's terms. Defendants also insist they are not required to ensure that the purchaser of a policy on their website has reviewed and acknowledged that policy's terms. (*Id.*)

The Court finds that there was mutual assent to the arbitration clause. Mr. Schwartz's actions demonstrate, not only his acknowledgment of both the Policy and arbitration clause, but his intent to be bound. The Policy, which Mr. Schwartz elected to purchase, was available for viewing on the website. (Doc. 24 at 2). Mr. Schwartz filed a

claim after his accident, and when he was denied coverage, he appealed. Both insurance claim and appeal procedures are outlined in the Policy, immediately preceding the arbitration clause. Mr. Schwartz provided the Policy to his counsel, who informed Defendants that if the parties could not resolve their dispute, Mr. Schwartz's counsel would have to implement the arbitration clause by filing an action with AAA. Thus, the objective evidence proves that the parties, through their "acts" and "written and spoken words," had a mutual understanding of the Policy and the underlying arbitration clause. *Johnson*, 132 P.3d at 828 (citing *Corbin–Dykes Elec. Co.*, 500 P.2d at 634)

### b. Unconscionability

Next, Mr. Schwartz argues the agreement is unenforceable because it is both procedurally and substantively unconscionable.

#### i. Procedural Unconscionability

Deciding whether an agreement is procedurally unconscionable requires a case-by-case analysis that focuses on the "fairness of the bargaining process," including the existence of "unfair surprise, fine print clauses, mistakes, or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Gullett ex rel. Estate of Gullett v. Kindred Nursing Ctrs. W., L.L.C.*, 390 P.3d 378, 386 (Ariz. Ct. App. 2017) (quoting *Dueñas v. Life Care Ctrs. of Am., Inc.*, 336 P.3d 763, 768 (Ariz. Ct. App. 2014)).

Courts consider the following factors "helpful" but "not exclusive," *Dueñas*, 336 P.3d at 768, in determining whether a contract is procedurally unconscionable: "[A]ge, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995). Courts also consider "whether the contract was separate from other paperwork, whether the contract used conspicuous typeface, and whether the contract was signed hurriedly and without explanation in emergency circumstances." *Dueñas*, 336 P.3d at 768 (internal citations omitted).

Mr. Schwartz alleges the arbitration clause is procedurally unconscionable because it was not provided to him when he applied for insurance and he therefore could not have consented to it. (Doc. 24 at 12). Mr. Schwartz also reiterates that he did not receive a copy of the Policy until after he filed his claim. (*Id.* at 3, 12). He claims that, even if he had received the Policy sooner, that the arbitration clause is "buried" on the last page of the Policy without a heading and without any indication of the waiver of the right to jury trial. (*Id.* at 12). Defendants respond by arguing Mr. Schwartz had access to the Policy but failed to read it. (Doc. 25 at 8). They also argue that the arbitration clause was not buried; it was in a section titled "Dispute Resolution." (*Id.* at 7). They further claim that Defendants had no duty to call attention to the arbitration provision or to include an obvious waiver of the right to jury trial. (*Id.*)

The Court finds that the arbitration agreement was not procedurally unconscionable. It is undisputed that that Policy was accessible on the website. (Doc. 24 at 2). The Court understands that there may have been confusion during the online application process, since Mrs. Nishiguchi received three separate agreements before completing the transaction, none of which were the Policy itself. However, this does not amount to unfair surprise because the Policy Mr. Schwartz and Mrs. Nishiguchi intended to purchase was available for their review the entire time. The Court further finds that the arbitration clause was not buried because, although it is located on the last page of the Policy, there is a clear way to locate it. It is found under bolded section headings by going to the last section of the Policy, "General Provisions," then to "Grievances," and finally, to "Dispute Resolution." Finally, Mr. Schwartz has made no indication that age, education, intelligence, or the other *Maxwell* factors apply. Thus, the Court finds that Mr. Schwartz has not sustained his burden of proving the contract was procedurally unconscionable.

### ii. Substantive Unconscionability

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell*, 907 P.2d at 58 (citing *Resource Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1041 (Utah 1985)).

Courts consider whether the "contract terms [are] so one-sided as to oppress or unfairly surprise an innocent party," whether there is "an overall imbalance in the obligations and rights imposed by the bargain," and whether there is a "significant cost-price disparity." *Id.* (citing *Resource Mgmt. Co.*, 706 P.2d at 1041).

One way an arbitration agreement may be substantively unconscionable is if the "fees and costs to arbitrate are so excessive as to 'deny a potential litigant the opportunity to vindicate his or her rights.'" *Dueñas*, 336 P.3d at 769 (quoting *Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013)). The party challenging the clause must provide "specific, non-speculative" "evidence regarding the probable costs of arbitration and individualized evidence regarding her inability to pay those costs." *Dueñas*, 336 P.3d at 769–770 (citing *Clark*, 307 P.3d at 80).

Courts look for several elements. *See Clark*, 307 P.3d at 80. First, "the party seeking to invalidate the arbitration agreement must present evidence concerning the cost to arbitrate." *Id.* (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000)). Second, "a party must make a specific, individualized, showing as to why he or she would be financially unable to bear the costs of arbitration." *Id.* (citing *Randolph*, 531 U.S. 79, 91–92 (2000)). Third, "a court must consider whether the arbitration agreement or the applicable arbitration rules referenced in the arbitration agreement permit a party to waive or reduce the costs of arbitration based on financial hardship." *Id.* (citing *Randolph*, 531 U.S. 79, 91–92 (2000)). A finding of substantive unconscionability "alone is sufficient to render a contract unconscionable." *Batory v. Sears, Roebuck & Co.*, 456 F. Supp. 2d 1137, 1140 (D. Ariz. 2006) (citing *Maxwell*, 907 P.2d at 59).

Mr. Schwartz asserts the arbitration clause is substantively unconscionable because arbitration must occur in Philadelphia, Pennsylvania. (Doc. 24 at 12). He argues it would be a burden to travel to Pennsylvania because the contract was formed in Arizona, his medical witnesses are in Arizona, and he resides in Florida. (Doc. 24 at 12–13). Additionally, Mr. Schwartz argues, AAA's Commercial Rules would make arbitration prohibitively expensive, requiring him to pay $14,300 in administrative fees, along with

"additional party fees," "hearing room rental" fees, and "additional services" fees. (*Id.*) Mr. Schwartz also notes the costs arising from having to travel from Florida to Pennsylvania, from requiring his Arizona physicians to travel to Pennsylvania, and from hiring a Pennsylvania lawyer. (*Id.*)

Defendants challenge Mr. Schwartz's allegations of undue cost as speculative because Mr. Schwartz does not provide estimates of expected litigation costs. (Doc. 25 at 8). They note Mr. Schwartz's failure to disclose whether he entered into a contingent fee agreement that would require his counsel to advance costs. (*Id.*) Nonetheless, they allege that Mr. Schwartz's concerns are assuaged because AAA's Rules allow for reduction or waiver of administrative fees. (Doc. 25 at 9). Defendants also challenge Mr. Schwartz's allegations of undue cost connected to hiring Pennsylvania counsel, since Rule 5.5 of the Pennsylvania Rules of Professional Conduct provides that lawyers admitted in other jurisdictions "may provide legal services on a temporary basis" that are "reasonably related to a pending or potential arbitration." (*Id.*) Defendants also question why Mr. Schwartz's physicians would need to travel to Pennsylvania when they could make virtual appearances. (Doc. 25 at 9).

Upon reviewing the record, the Court finds that the arbitration agreement is not substantively unconscionable. Mr. Schwartz's claims of substantive unconscionability largely rest on the prohibitive expense of arbitration. Mr. Schwartz is currently unable to work due to his injuries. He and his wife live on a combined income of $90,000. (Doc. 24-1 at 4). Under the AAA's administrative fee schedules, Mr. Schwartz is presented with two options to pay administrative fees: standard fee schedule and flexible fee schedule. (Doc. 24-5 at 1). The standard option requires two payments totaling $12,335. (Doc. 24-5 at 2). The flexible option requires three payments totaling $14,300. (*Id.*) Administrative costs are not inclusive of "additional party fees," "additional services" fees, or "hearing room rental" fees. (Doc. 24-5 at 4). Importantly, AAA Rule 53 states that "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." Additionally, Mr. Schwartz has not provided any facts supporting the possibility of adding

new parties. Mr. Schwartz also has not explained which additional services "that go beyond those provided for in the AAA's rules," he would require. (Doc. 24-5 at 4). Mr. Schwartz gives no explanation as to why hiring Pennsylvania counsel is necessary given Rule 5.5 of the Pennsylvania Rules of Professional Conduct. Mr. Schwartz's concerns related to flying his doctors to Pennsylvania are equally unsupported. Thus, the Court finds that Mr. Schwartz has not provided "specific, non-speculative" "evidence regarding the probable costs of arbitration and individualized evidence regarding [his] inability to pay those costs." *Dueñas*, 336 P.3d at 769–770 (citing *Clark*, 307 P.3d at 80). Ultimately, the Court finds the Policy's arbitration clause is neither procedurally nor substantively unconscionable.

### c. Reasonable Expectations

Finally, Mr. Schwartz argues the reasonable expectations doctrine renders the arbitration agreement unenforceable. Under the reasonable expectations doctrine, terms to an agreement may be struck when a party has "reason to believe" a signing party would not accept the term. *Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1050 (Ariz. Ct. App. 2005). Arizona courts look to seven factors to determine if a party had reason to believe a party would not accept a term. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 397 (Ariz. 1984). Evidence of reasons to believe can be shown by (1) "prior negotiations," or (2) it can be "inferred from the circumstances," (3) or "inferred from the fact that the term is bizarre or oppressive," or from (4) "the fact that it eviscerates the non-standard terms explicitly agreed to," (5) or "from the fact that it eliminates the dominant purpose of the transaction." *Id.* It is (6) required that provisions are drafted so that they "can be understood if the customer does attempt to check on his rights." *Harrington*, 119 P.3d at 1051 (quoting *Darner*, 682 P.2d at 399). Courts are also required to consider (7) "any other facts relevant to the issue of what [the party seeking to invalidate the agreement] reasonably expected in [the] contract." *Id.* (citing *Darner*, 682 P.2d at 398).

Mr. Schwartz acknowledges, and Defendants agree, that factors one (prior negotiations), two (inference from circumstances), and five (eliminates dominant purpose of transaction), do not weigh one way or the other. (Docs. 24 at 13; 25 at 10).

The third factor asks whether the term is "bizarre" or "oppressive." Here, Mr. Schwartz argues that the arbitration clause is bizarre and oppressive because it does not appear to be a contract, and because it requires an expensive arbitration in Pennsylvania. (Doc. 24 at 13). The Court has already found the contract is not unconscionable or oppressive, and Mr. Schwartz does not explain what makes the term bizarre.

Factor four addresses whether the arbitration clause "eviscerates the non-standard terms explicitly agreed to." The Court finds no such effect, and Mr. Schwartz fails to address this factor.

Factor six considers whether the provision "can be understood if the customer does attempt to check on his rights." Mr. Schwartz asserts that "nothing was drafted where customers could have looked, in applying for and in paying for the Policy, regarding arbitration." (Doc. 24 at 13). This factor considers the terms of the provision. Mr. Schwartz's allegation that "nothing was drafted where customers could have looked," misses the mark, and is contradicted by the undisputed fact that the Policy was accessible on the website. The Court finds that if a customer were to "attempt to check on his rights," that there is nothing in the wording of the arbitration clause rendering it incomprehensible.

The seventh factor considers any other relevant facts. Mr. Schwartz argues that "there is no evidence that [he] was ever aware of and even agreed to [the] provision." (Doc. 24 at 13–14). The Court is unpersuaded because Mr. Schwartz used the Policy to file a claim and later appealed the decision denying his claim. (Doc. 25 at 3). Additionally, Mr. Schwartz, through counsel, communicated his intention to invoke the arbitration clause if the parties could not reach a resolution.

Considering these factors, the Court finds the reasonable expectations doctrine does not render the arbitration clause unenforceable. Therefore, having exhausted Mr. Schwartz's arguments to the contrary, the Court finds the arbitration clause is enforceable.

**IV. Scope of Arbitration**

The Court will now determine whether the Policy's arbitration clause governs the claims at issue. *See Chiron Corp.*, 207 F.3d at 1130. Here, the relevant language in the

arbitration clause states that "[a]ll grievances not resolved by the Insurer's grievance procedures, and all other controversies and claims *arising out of or relating to the Policy . . .* shall be determined by final and binding arbitration administered by the [AAA]." (Doc. 24-3 at 25) (emphasis added).

When considering arbitration clauses, federal courts interpret the phrases such as "arising in connection with" very broadly. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Such phrasing "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id*. When an arbitration clause is thus phrased, a plaintiff's "factual allegations need only 'touch matters' covered by the . . . arbitration clause" to require arbitration, "and all doubts are to be resolved in favor of arbitrability." *Id.*

Mr. Schwartz concedes that his breach of contract claim against 4 Ever Life falls within the scope of the arbitration clause. However, he argues that his bad faith and aiding and abetting claims do not because they are independent torts and do not arise under the Policy. (Doc. 24 at 10–11).

The Court finds that both the bad faith and adding and abetting claims plainly "touch upon" the Policy. *See Simula, Inc.*, 175 F.3d at 721. As alleged in his bad faith claim, "4 Ever/BCBS knowingly or recklessly denied Schwartz the coverage he was entitled to under the *Policy*." (Doc. 11 at ¶ 53) (emphasis added). As alleged in the aiding and abetting claim, "Worldwide substantially assisted 4 Ever/BCBS in breaching their *insurance policy* and committing bad faith by falsely claiming to Schwartz that it had an independent qualified physician review his claim . . . ." (*Id.* at ¶ 62) (emphasis added). Given these allegations and the scope of the arbitration agreement, which the Court must interpret broadly, the Court finds that Mr. Schwartz's bad faith and aiding and abetting claims have a significant relationship to the contract and that all of Mr. Schwartz's claims are subject to arbitration. *See Simula, Inc.*, 175 F.3d at 721.

**V.     Stay of Proceedings**

Defendants request that the Court enter a stay or proceedings. (Doc. 21 at 5). Under

9 U.S.C. § 3, when a court finds that the suit "is referable to arbitration" it shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." Because the Court has found this matter referable to arbitration, it will stay all proceedings.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration (Doc. 21) is **granted.** The parties shall proceed with arbitration as dictated by the Policy.

**IT IS FURTHER ORDERED** that all proceedings in this matter are hereby stayed.

**IT IS FINALLY ORDERED** that the parties shall provide the Court with a joint status report within thirty (30) days of this Order, informing the Court of their progress in arbitrating this matter. Thereafter, the parties shall submit a joint status report every four (4) months to inform the Court of their progress.

Dated this 29th day of June, 2021.

_____
Honorable Diane J. Humetewa
United States District Judge